# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MANIILAQ ASSOCIATION** | ) | |
| P.O. Box 256 | ) | |
| 733 Second Ave. | ) | |
| Kotzebue, AK  99752 | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-____ |
| | ) | |
| **SYLVIA BURWELL**, in her official capacity | ) | |
| as Secretary, | ) | |
| U.S. Department of Health & Human Services | ) | |
| 200 Independence Ave, S.W. | ) | |
| Washington, DC 20201 | ) | |
| | ) | **COMPLAINT** |
| **YVETTE ROUBIDEAUX**, in her official capacity | ) | |
| as Director, | ) | |
| Indian Health Service | ) | |
| 801 Thompson Avenue, Ste. 400 | ) | |
| Rockville, MD 20852-1627 | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Served:     The Honorable Eric H. Holder, Jr.
            Attorney General of the United States
            Department of Justice
            950 Pennsylvania Avenue, NW
            Washington, D.C.   20530-0001

            The Honorable Ronald C. Machen, Jr.
            United States Attorney for the District of Columbia
            Judiciary Center Building
            555 Fourth Street, NW
            Washington, D.C.   20530

## COMPLAINT FOR DECLARATORY, MANDAMUS, AND INJUNCTIVE RELIEF

The Plaintiff, for its cause of action against the Defendants named above, alleges as follows:

### INTRODUCTION

1.      The Plaintiff, Maniilaq Association ("Maniilaq"), is an Alaska Tribal Non-Profit Corporation that operates a comprehensive health services delivery program for its 12 member Alaska Native Village Tribes, and other eligible American Indians and Alaska Natives, in the Northwest Arctic Borough and Point Hope region of Northwest Alaska.  Maniilaq, on behalf of its member Tribes, operates its health services delivery program as a co-signer to the self-governance Alaska Tribal Health Compact ("ATHC" or "Compact") and under funding agreements with the Indian Health Service ("IHS"), which are authorized by Title V of the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 458aaa, *et seq.*

2.      As part of its compacted health services program, Maniilaq delivers health services in remote village locations through paraprofessionals (community health aides and practitioners) using Village Built Clinic ("VBC") facilities located in the villages served.  The Community Health Aide Program for Alaska ("CHAP"), through which Manillaq delivers its services, is established by Congress in the Indian Health Care Improvement Act, 25 U.S.C. § 1616*l*.  The IHS has for many years, under discretionary delegated authority from the General Services Administration ("GSA"), leased and maintained VBC facilities located in remote Alaska Native villages for use by tribal compactors operating the CHAP program under ISDEAA funding agreements.  However, Section 105(*l*) of the ISDEAA  ("§ 105(*l*)") contains a specific mandatory leasing authority requiring the IHS to lease from Indian tribes or tribal organizations VBC and other facilities used by the Indian tribes and tribal organizations for the

administration and delivery of services under ISDEAA contracts and compacts and to pay compensation to those tribes and tribal organizations under the lease.  25 U.S.C. § 450j(*l*).  The § 105(*l*) leasing authority is expressly made applicable to Title V self-governance compactors such as Maniilaq.  25 U.S.C. § 458aaa-15(a).

3.        Section 105(*l*) leases have their own funding scheme set out in implementing regulations at 25 C.F.R. §§ 900.69-900.74.  This case primarily involves the issue, not decided in previous litigation between the parties, *Maniilaq Ass'n v. Burwell*, No. 13-cv-380(TFH), 2014 WL 5558336 (D.D.C. Nov. 3, 2014), of whether § 105(*l*) requires mandatory compensation according to the funding scheme in the implementing regulations and the statutory mandate.

4.         Title V of the ISDEAA requires the IHS and compacting tribes and tribal organizations to negotiate funding agreements.  25 U.S.C. § 458aaa-4.  In the event a tribe or tribal organization and the IHS are unable to agree, in whole or in part, on the terms of a funding agreement (including funding levels), the tribe or tribal organization may submit a "final offer" to the IHS.  25 U.S.C. § 458aaa-6(b).  Within 45 days of receipt of the final offer, the Secretary must either accept the final offer, 25 U.S.C. § 458aaa-6(b), or reject it on one of four specific statutory grounds, 25 U.S.C. § 458aaa-6(c).

5.        At negotiations for the fiscal year 2015 funding agreement, Maniilaq and the IHS were unable to reach agreement on a § 105(*l*) lease proposal by Maniilaq for an IHS lease of a VBC facility owned and utilized by Maniilaq in Kivalina, Alaska.  Maniilaq proposed that the lease be attached to and incorporated into Maniilaq's 2011 funding agreement (which is still in effect for fiscal year 2015).  The IHS took the position that any lease compensation would be capped at the amount historically received by Maniilaq through its compact and funding agreements for the VBC Program with respect to the Kivalina facility, often referred to as the

"Secretarial amount," and would not be determined using the criteria listed in regulations implementing the Secretary's leasing authority under § 105(*l*).

6.      Maniilaq submitted its last final offer to the IHS on December 5, 2014.  The IHS responded by letter dated January 7, 2015, rejecting Maniilaq's final offer in its entirety on the grounds that the amount of funds proposed in the final offer exceeded the applicable funding level to which Maniilaq was entitled for the lease.

7.      Maniilaq now appeals the IHS's rejection of its December 5, 2014 final offer. Maniilaq respectfully asks this Court: (1) to declare that compensation for a § 105(*l*) lease is mandatory; that such compensation must be based on the compensation options described in § 105(*l*) and its implementing regulations; that the Secretary does not have discretion to base compensation on factors not described in § 105(*l*) or its implementing regulations; and that compensation under a § 105(*l*) lease is distinct from and is not limited by or duplicative of the amount that the IHS would have otherwise provided for a retroceded share of an associated program through a compact and funding agreements; (2) to order the Defendants to enter into the proposed lease of the Kivalina VBC facility and incorporate the lease into the funding agreement along with necessary language to implement the terms of the final offer; and (3) to order the Defendants to provide to Maniilaq the compensation in the proposed lease ($249,842) for Maniilaq's use of the leased Kivalina VBC facility in carrying out the compacted CHAP program under the funding agreement.

## JURISDICTION AND VENUE

8.      This court has jurisdiction under § 110(a) of the ISDEAA, 25 U.S.C. § 450m-1(a), which provides in pertinent part:

> The United States district courts shall have original jurisdiction over any civil
> action or claim against the appropriate Secretary arising under this [Act] . . . . In

an action brought under this paragraph, the district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this [Act] or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this [Act] or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 450f(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract.)

9.      25 U.S.C. § 450m-1(a) is made applicable to self-governance compacts and funding agreements under 25 U.S.C. § 458aaa-10(a).  A self-governance tribe or tribal organization, in lieu of administratively appealing an IHS rejection of its final offer, may "directly proceed to initiate an action in a Federal district court pursuant to section 450m-1(a) of this title."  25 U.S.C. § 458aaa-6(c)(1)(C).

10.     Venue is proper under 28 U.S.C. § 1391(e) because the U.S. Department of Health and Human Services is located in the District of Columbia.

**PARTIES**

11.     Maniilaq is an Alaska Tribal Health Non-Profit Corporation which serves as the tribal organization for 12 federally recognized Alaska Native Village Tribes located in the Northwest Arctic Borough and Point Hope region of Northwest Alaska.  Maniilaq's 12 member Tribes are: Ambler, Buckland, Deering, Kiana, Kivalina, Kobuk, Kotzebue, Noatak, Noorvik, Selawik, Shungnak, and Point Hope.  Maniilaq is located in Kotzebue, Alaska.  Maniilaq operates health facilities and provides health care services to its member Tribes and other American Indian and Alaska Native beneficiaries as a Co-Signer to the ATHC and pursuant to its funding agreements with the IHS under Title V of the ISDEAA, 25 U.S.C. § 458aaa, *et seq*. Maniilaq is an "Indian tribe" for purposes of Title V and its regulations.  *See* 25 U.S.C. § 458aaa(b); 42 C.F.R. § 137.10.

12.     Defendant Sylvia Burwell, the Secretary of Health and Human Services ("Secretary"), has overall responsibility for carrying out all the functions, responsibilities, authorities and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department.  She is sued in her official capacity.

13.     Defendant Yvette Roubideaux is the Acting Director of the IHS, the agency charged by law with the responsibility for implementing the ISDEAA and other health laws benefiting American Indians and Alaska Natives on behalf of the United States, 25 U.S.C. § 1661(c)(3).  She is sued in her official capacity.

## STATUTORY AND REGULATORY BACKGROUND

14.     The ISDEAA authorizes Indian tribes and tribal organizations to assume responsibility to administer programs, functions, services and activities ("PFSAs") that the Secretary would otherwise be obligated to provide under federal law to American Indians and Alaska Natives.  25 U.S.C. § 450f(a)(1).  The purpose of the ISDEAA is to reduce federal domination of Indian programs and promote tribal self-determination and self-governance.  *See* 25 U.S.C. § 450a(b); *Cherokee Nation v. Leavitt*, 543 U.S. 631, 639 (2005).  The ISDEAA reflects the United States' commitment "to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities."  25 U.S.C. § 450a(b).

15.     Title V of the ISDEAA requires the Secretary to establish and carry out within the IHS a program known as the "Tribal Self-Governance Program."  25 U.S.C. § 458aaa-1.  Title V requires the Secretary to negotiate and enter into self-governance compacts, 25 U.S.C. § 458aaa-3(a), and funding agreements, 25 U.S.C. § 458aaa-4(a), with Indian tribes and tribal organizations participating in the self-governance program.

16.     25 U.S.C. § 458aaa-4(b) requires that each funding agreement shall, "as determined by the Indian tribe," include all PFSAs administered by the IHS under certain listed laws, including the Indian Health Care Improvement Act, 25 U.S.C. § 1601, *et seq.* The Indian Health Care Improvement Act authorizes, among other programs, the CHAP in Alaska, 25 U.S.C. § 1616*l*, which utilizes the VBC facilities. By statute, the amount of funding provided by the Secretary for operation of the PFSAs included in each funding agreement shall not be less than the amount the Secretary would have otherwise provided for the PFSAs (or portions thereof) had the Secretary continued to operate them herself (often referred to as the "Secretarial amount"). 25 U.S.C. § 450j-1(a)(1); 25 U.S.C. § 458aaa-15(a) (making 25 U.S.C. § 450j-1 applicable to Title V compacts and funding agreements).

17.     In the negotiation of compacts and funding agreements, the Secretary shall at all times negotiate in good faith to maximize implementation of the self-governance policy. 25 U.S.C. § 458aaa-6(e).

18.     Title V of the ISDEAA provides for a "final offer" process in the event of a stalemate in negotiations for funding agreements. Section 507(b) of the ISDEAA, 25 U.S.C. § 458aaa-6(b), provides:

> In the event the Secretary and a participating Indian tribe are unable to agree, in whole or in part, on the terms of a compact or funding agreement (including funding levels), the Indian tribe may submit a final offer to the Secretary. Not more than 45 days after such submission, or within a longer time agreed upon by the Indian tribe, the Secretary shall review and make a determination with respect to such offer. In the absence of a timely rejection of the offer, in whole or in part, made in compliance with subsection (c), the offer shall be deemed agreed to by the Secretary.

19.     Subsection 507(c) of the ISDEAA, 25 U.S.C. § 458aaa-6(c), provides that, if the Secretary rejects a final offer, the Secretary shall provide "timely written notification to the

Indian tribe that contains a specific finding that clearly demonstrates, or that is supported by a

controlling legal authority, that" one or more of the following four reasons for rejection apply:

> (1) the amount of funds proposed in the final offer exceeds the applicable funding
> level to which the Indian tribe is entitled under this part;
> (2) the program, function, service, or activity (or portion thereof) that is the
> subject of the final offer is an inherent Federal function that cannot legally be
> delegated to an Indian tribe;
> (3) the Indian tribe cannot carry out the program, function, service, or activity (or
> portion thereof) in a manner that would not result in significant danger or risk to
> the public health; or
> (4) the Indian tribe is not eligible to participate in self-governance under section
> 458aaa-2 of this title.

20.     Section 105(*l*) of the ISDEAA, 25 U.S.C. § 450j(*l*), expressly made applicable by

25 U.S.C. § 458aaa-15(a) to compacts and funding agreements under the Title V Tribal Self-

Governance Program, requires the Secretary to enter into certain types of leases with Indian

tribes or tribal organizations at their request.  Section 105(*l*) provides:

> (1) Upon the request of an Indian tribe or tribal organization, the Secretary shall
> enter into a lease with the Indian tribe or tribal organization that holds title to, a
> leasehold interest in, or a trust interest in, a facility used by the Indian tribe or
> tribal organization for the administration and delivery of services under this
> subchapter.
>
> (2) The Secretary shall compensate each Indian tribe or tribal organization that
> enters into a lease under this paragraph (1) for the use of the facility leased for the
> purposes specified in such paragraph.  Such compensation may include rent,
> depreciation based on the useful life of the facility, principal and interest paid or
> accrued, operation and maintenance expenses, and such other reasonable expenses
> that the Secretary determines, by regulation, to be allowable.

21.     Implementing regulations at 25 C.F.R. § 900.74 provide, with respect to § 105(*l*)

leases:

> How may an Indian tribe or tribal organization propose a lease to be compensated
> for the use of facilities?
>
> There are three options available:
> (a) The lease may be based on fair market rental.

(b) The lease may be based on a combination of fair market rental and paragraphs (a) through (h) of § 900.70, provided that no element of expense is duplicated in fair market rental.

(c) The lease may be based on paragraphs (a) through (h) of § 900.70 only.

25 C.F.R. § 900.70 lists various elements of compensation that may be included if not duplicative, including rent, depreciation, principal and interest paid or accrued, various operation and maintenance expenses, repairs and alterations, and other reasonable expenses.

22.     The Secretary is authorized to promulgate regulations governing the self-governance program, but only through negotiated rulemaking procedures.  25 U.S.C. § 458aaa-16.  25 U.S.C. § 458aaa-16(e) limits the authority of the IHS to impose on participating self-governance tribes its policies and procedures not contained in regulations as follows:

(e) Effect of circulars, policies, manuals, guidances, and rules

Unless expressly agreed to by the participating Indian tribe in the compact or funding agreement, the participating Indian tribe shall not be subject to any agency circular, policy, manual, guidance, or rule adopted by the Indian Health Service, except for the eligibility provisions of section 450j(g) of this title and regulations promulgated under this section.

23.     There are two sets of regulations that implement the ISDEAA with respect to health programs: (1) joint regulations of the Secretaries of the Interior and Health and Human Services governing self-determination contracting under Title I of the ISDEAA at 25 C.F.R. Part 900; and (2) regulations of the Secretary of Health and Human Services governing the self-governance program under Title V of the ISDEAA at 42 C.F.R. Part 137.

24.     Title V of the ISDEAA also contains its own rules for interpreting federal laws and regulations.  25 U.S.C. § 458aaa-11(a) provides that:

Except as otherwise provided by law, the Secretary shall interpret all Federal laws, Executive orders, and regulations in a manner that will facilitate—(1) the inclusion of programs, services, functions, and activities (or portions thereof) and

> funds associated therewith, in the agreements entered into under this section; (2) the implementation of compacts and funding agreements entered into under this part; and (3) the achievement of tribal health goals and objectives."

25 U.S.C. § 458aaa-11(f) provides that: "Each provision of this part and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe."

### GENERAL ALLEGATIONS

25.     Maniilaq participates in the IHS's self-governance program on behalf of its 12 member Tribes as a Co-Signer to the ATHC and pursuant to its funding agreements with the IHS under the ISDEAA.  As part of its compacted health services program, Maniilaq provides the CHAP program within its regional service area under its funding agreement with the IHS.  In carrying out the CHAP program, Maniilaq delivers health services in remote village locations using VBC facilities located in the villages.

26.     As part of its compacted health services program, Maniilaq also assumed the IHS Village Built Clinic Lease/Construction Program ("VBC Program").  This program is described in Maniilaq's funding agreement as providing funds to eligible entities to support the rental of Community Health Practitioner/Aide clinic space and providing funds for construction, maintenance, and upkeep of Village Clinic Facilities.  Maniilaq has acquired from its member villages, and now owns, all the VBC facilities in its member villages, except Point Hope.

27.     By Memorandum dated February 29, 2012, to the IHS, Maniilaq announced its intent to retrocede the VBC Program back to the IHS under Section 506(f) of the ISDEAA, 25 U.S.C. § 458aaa-5(f).  Section 506(f) authorizes an Indian tribe to retrocede, fully or partially, to the Secretary programs, services, functions, or activities (or portions thereof) included in the self-governance compact or funding agreement.  The February 29, 2012 Memorandum also

announced Maniilaq's intention to negotiate new VBC facility leases with the IHS under § 105(*l*)

of the ISDEAA and proposed specific changes to Maniilaq's funding agreement and its

appendices to implement the new VBC facility arrangements.

28.     The IHS responded to the February 29, 2012 Memorandum by letter from

Evangelyn "Angel" Dotomain, Director of Tribal Programs, Alaska Area Native Health Service

("AANHS"), to Ian Erlich, President/CEO of Maniilaq, dated May 15, 2012.  In that letter,

characterized as technical assistance, Ms. Dotomain agreed with Maniilaq that leasing of tribal

facilities under § 105(*l*) is mandatory.  However, she asserted that paying monetary

compensation for a § 105(*l*) lease is not mandatory but entirely within the discretion of the IHS.

The AANHS May 15, 2012 letter also stated that "requests by tribes for facility leases under

§ 105(*l*) of the ISDEAA are not negotiated," and that such leases must be submitted to the

AANHS through an administrative process known as the Lease Priority System.  The Lease

Priority System is not codified in the regulations at 25 C.F.R. Part 900 or 42 C.F.R. Part 137.

29.     In response to the AANHS May 15, 2012 letter, and in light of discussions with

AANHS during negotiations, Maniilaq submitted a final offer by letter from Ian Erlich,

President/CEO, to Christopher Mandregan, Jr., Area Director, AANHS, dated November 28,

2012.  That final offer revoked Maniilaq's earlier retrocession of the VBC Program in the

February 29, 2012 Memorandum, except for that portion of the program associated with a VBC

facility owned by Maniilaq in Ambler, Alaska.  The final offer provided that this partial

retrocession of the VBC Program for the Ambler clinic would take effect on September 30,

2012, as agreed to by the IHS in its May 15, 2012 letter.

30.     In its November 28, 2012 final offer, Maniilaq disputed AANHS's statements that

the IHS has the discretion to fund leases under § 105(*l*) at any amount the agency wishes,

including $0, and that § 105(*l*) leases must be submitted through the Lease Priority System. Maniilaq also disputed AANHS's objections to the specific changes to Maniilaq's funding agreement, and it expressed its belief that the lease should be incorporated into and deemed part of the funding agreement.

31.     The November 28, 2012 final offer concluded by referencing an enclosed proposed lease for the Ambler VBC facility, and it proposed specific compensation for the lease based on the option provided in 25 C.F.R. § 900.74(c), "based on paragraphs (a) through (h) of § 900.70 only."  The final offer included a breakdown of the compensation pursuant to § 900.70 (a) through (h), totaling $172,536.

32.     The IHS responded to the November 28, 2012 final offer 58 days later by letter from Christopher Mandregan, Jr., Director, AANHS, to Ian Erlich, President/CEO, of Maniilaq, dated January 25, 2013.  In that letter, the AANHS took the position that Maniilaq's November 28, 2012 letter and proposed lease was not a final offer subject to the final offer provisions of Title V because leases are "stand-alone agreements" separate from a compact or funding agreement.  The letter also asserted that the ISDEAA grants the IHS "full discretion" in determining what compensation a requesting tribe will receive for a § 105(*l*) lease, as stated in the AANHS's earlier May 15, 2012 letter.  Mr. Mandregan agreed to issue a lease, but he asserted, in accordance with the May 15, 2012 letter, that Maniilaq's proposed lease for the Ambler clinic under § 105(*l*) must be processed through the IHS Lease Priority System.

33.     On March 25, 2013, Maniilaq filed a complaint for declaratory, mandamus, and injunctive relief in this Court asking the Court to declare that Maniilaq's November 28, 2012 final offer was deemed approved by operation of law due to the IHS's failure to respond within the 45-day statutory period and to compel the IHS to enter into the proposed lease of the Ambler

VBC facility and incorporate that lease into Maniilaq's funding agreement as provided in the final offer.  *See* Complaint, *Maniilaq Ass'n v. Burwell*, No. 13-cv-380(TFH), 2014 WL 5558336 (D.D.C. Nov. 3, 2014) (No. 1).  Alternatively, if the Court were to find that the proposed lease was not subject to the final offer provisions of Title V, Maniilaq asked the Court to declare that the AANHS's determinations that Maniilaq was required to submit its § 105(*l*) lease request through the Lease Priority System and that the IHS need not provide monetary compensation to Maniilaq under a § 105(*l*) lease were contrary to the ISDEAA.

34.     The parties filed cross motions for summary judgment.  On August 22, 2014, Judge Thomas F. Hogan entered an Order granting Maniilaq's motion for summary judgment and denying the Defendants' cross motion.  In the Memorandum Opinion accompanying the Order, Judge Hogan held that a § 105(*l*) lease can be incorporated into an ISDEAA funding agreement and that Maniilaq's November 28, 2012 final offer was deemed approved by operation of law due to the IHS's failure to timely respond.  As a result, Judge Hogan did not reach the questions of whether IHS would have otherwise had the authority to require Maniilaq to propose a § 105(*l*) lease through the Lease Priority System or whether the IHS had discretion to determine the amount of compensation available to Maniilaq, including $0, based on factors other than those listed in the § 105(*l*) implementing regulations.

35.     The IHS did not appeal Judge Hogan's ruling.  On October 20, 2014, Maniilaq's proposed lease of the Ambler VBC facility was signed by the parties, and it is now included in Maniilaq's funding agreement at the requested funding level of $172,536.

36.     In a letter dated October 28, 2014, Maniilaq submitted a final offer, similar to the November 28, 2012 final offer, proposing to retrocede the portion of the VBC Program associated with its VBC facility in Kivalina, Alaska, and to enter into a § 105(*l*) lease for that

facility.  The October 28, 2014 letter referenced the Ambler VBC facility litigation and prior discussions in which Maniilaq had stated its intention to enter into similar leases for each of its VBC facilities.  Maniilaq included a proposed lease and a breakdown of the proposed compensation pursuant to 25 C.F.R. § 900.70 and 25 C.F.R. § 900.74, totaling $249,842. Maniilaq further indicated its willingness to negotiate with the IHS during the 45-day statutory period of review.

37.     Benjamin Smith, Director of the Office of Tribal Self-Governance within IHS, responded to Maniilaq by email on October 29, 2014.  Mr. Smith indicated that, once a final offer is submitted pursuant to 25 U.S.C. § 458aaa-6, "negotiations do not occur."  He recommended that Maniilaq withdraw its final offer and request that the IHS negotiate.

38.     By letter dated October 31, 2014, Maniilaq offered to suspend its October 28, 2014 final offer until November 15, 2014, to allow for negotiations over the terms of the Kivalina lease and the amendment to incorporate it into Maniilaq's funding agreement.

39.     By letter dated November 5, 2014, Yvette Roubideaux, Acting Director of the IHS, responded that the ISDEAA does not provide for suspension of a final offer and that Maniilaq must withdraw its October 28, 2014 offer in order to resume negotiations.  Director Roubideaux stated that she had authorized Ms. Evangelyn Dotomain to represent her as Agency Lead Negotiator during compact and funding agreement negotiations in the IHS Alaska Area, and she suggested that Maniilaq contact Ms. Dotomain to schedule negotiations.

40.     By letter dated November 10, 2014, to Ms. Dotomain, Maniilaq agreed to withdraw its October 28, 2014 final offer and requested that negotiations begin promptly. Maniilaq disagreed with the conclusion that the IHS was prohibited from negotiating during a

pending final offer, but it recognized that the IHS would not negotiate unless the final offer was withdrawn.

41.     The IHS responded to Maniilaq with a counter proposal by letter dated December 1, 2014.  In that letter, the IHS indicated that, if Maniilaq would agree to retrocede the $30,921 associated with the Kivalina VBC facility in its funding agreement, the IHS would be willing to enter into a § 105(*l*) lease for that facility, but only for the same amount of $30,921.  The letter further stated that the "IHS will not agree to incorporate the lease into Maniilaq Association's [funding agreement] unless you are willing to agree that the terms and conditions of Maniilaq Association's Compact and [funding agreement] do not apply to the lease. . . . The lease must be a stand-alone document with its own terms and conditions controlling the parties' obligations and rights."  The letter asserted that Judge Hogan's decision in the Ambler VBC facility litigation had no relevance to the Kivalina final offer.

42.     The parties held a follow-up teleconference on December 4, 2014, but were unable to come to an agreement on the proposed lease.

43.     By letter dated December 5, 2014, Maniilaq submitted a second final offer proposing to retrocede the portion of the VBC Program associated with its Kivalina VBC facility and to enter into a § 105(*l*) lease for that facility, which would be incorporated into Maniilaq's funding agreement, with compensation pursuant to 25 C.F.R. § 900.70 and 25 C.F.R. § 900.74 totaling $249,842.  Maniilaq noted in the December 5, 2014 final offer letter that the parties had reached an impasse with respect to the key issues of lease compensation and inclusion of the lease in the funding agreement.  Maniilaq attached a proposed lease for the Kivalina clinic to the final offer letter, and it proposed in the letter that Maniilaq's FY 2011 Funding Agreement be amended to provide that "[t]he attached lease of the Village Built Clinic in the Native Village of

Kivalina is incorporated into the funding agreement and made a part thereof," and that Maniilaq's FY 2015 funding be revised accordingly.

44.     The December 5, 2014 final offer proposed that Maniilaq's retrocession of the VBC Program share associated with the Kivalina VBC facility take effect on February 1, 2015. Maniilaq did not dispute the IHS's claim that the funding share associated with the Kivalina VBC facility is $30,921, and Maniilaq agreed in the December 5, 2014 final offer letter that, upon retrocession, that amount "will be available to IHS to use as (partial) lease compensation."

45.     The December 5, 2014 final offer letter stated that the IHS must compensate Maniilaq for the use of the Kivalina VBC facility in accordance with 25 C.F.R. § 900.70 and 25 C.F.R. § 900.74.  Of the compensation options described in 25 C.F.R. § 900.74, Maniilaq proposed that compensation be based on the third option: paragraphs (a) through (h) of 25 C.F.R. § 900.70.  In the December 5, 2014 letter, Maniilaq also provided a breakdown of its actual expenditures for the Kivalina clinic for the period of October 1, 2013, through September 30, 2014, to support the reasonable and non-duplicative costs proposed to be recovered from each of the elements in § 900.70, which totaled $249,842.

46.     The IHS rejected Maniilaq's final offer by letter dated January 7, 2015.  The January 7, 2015 letter stated: "Upon consideration of your letter and final offer, the IHS rejects Maniilaq's final offer in its entirety on the grounds that 'the amount of funds proposed in the final offer exceeds the applicable funding level to which the Tribe is entitled under this title.'"

47.     The January 7, 2015 response letter stated that Section 106(a)(1) of the ISDEAA, 25 U.S.C. § 450j-1(a)(1), does not require the IHS to pay Maniilaq in its funding agreement any more than the amount the IHS "would have otherwise provided" for the operation of the VBC Program were the IHS still operating the program  (the "Secretarial amount"), which the IHS

stated is $30,921.  The IHS further stated in the January 7, 2015 response letter that § 105(*l*) of

the ISDEAA provides no authority for increasing the Secretarial amount.  IHS concluded in the

letter:

> Maniilaq's request to increase its funding for Kivalina Clinic is in reality a request
> for the IHS to increase its Secretarial amount over what Maniilaq receives now
> for its CHAP program and clinical space in Kivalina.  Because IHS is not
> obligated to pay more than the Secretarial amount for facility costs in Kivalina
> than it was paying previous to Maniilaq obtaining its own clinic and because of a
> lack of appropriated funding for clinic leases, the IHS must reject Maniilaq's final
> offer to increase the amount of these funds.

48.     In the January 7, 2015 letter, the IHS stated that the rationale for § 105(*l*) was to

overrule "a narrow construction of the ISDEAA by the Centers for Medicare & Medicaid

Services that a facility had to be owned or leased by the IHS in order to be eligible for 100%

Federal Medical Assistance Percentages (FMAP) from the State Medicaid program."

49.     The IHS stated in the January 7, 2015 letter that Maniilaq already receives

funding for its VBC Program through the Secretarial amount, and the "increase" requested

"would only be available by reducing the amount available to other Tribes; and under the

ISDEAA, IHS is prohibited from reducing the funding for one Tribe to make it available to

another."

50.     The IHS further stated in the January 7, 2015 letter that the IHS has discretion to

determine how much, if any, more funding Maniilaq may receive for its expenses at the Kivalina

Clinic "so long as IHS has provided Maniilaq what the Secretary otherwise would have provided

for operation of the program" under 25 U.S.C. 450j-1(a)(1).  The IHS based this conclusion on

the use of the word "may" in § 105(*l*), 25 U.S.C. § 450j(l)(2) (providing that the Secretary must

compensate tribes and that "[s]uch compensation <u>may</u> include rent, depreciation based on the

useful life of the facility, principal and interest paid or accrued, operation and maintenance

expenses, and such other reasonable expenses that the Secretary determines, by regulation, to be allowable") (emphasis added), and in the implementing regulations.

51.     The January 7, 2015 letter also concluded that the additional costs requested by Maniilaq in its final offer are duplicative because "[t]he Secretarial amount that the IHS paid for the VBC program in Kivalina included several of the elements from 25 C.F.R. § 900.70" and "[m]ost of the cost increases are related to the expansion of its village clinical program when it procured or constructed its new clinical space."

## CAUSES OF ACTION

### COUNT 1—Declaratory Relief: Compensation Under § 105(*l*)

52.     The allegations in Paragraphs 1—51 are herein incorporated by reference.

53.     The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief.

54.     Paragraph (1) of § 105(*l*) of the ISDEAA, 25 U.S.C. § 450j(*l*), requires the Secretary to enter into the proposed Kivalina VBC facility lease, and paragraph (2) clearly mandates compensation:

> The Secretary shall compensate each Indian tribe or tribal organization that enters into a lease under this paragraph (1) for the use of the facility leased for the purposes specified in such paragraph.  Such compensation may include rent, depreciation based on the useful life of the facility, principal and interest paid or accrued, operation and maintenance expenses, and such other reasonable expenses that the Secretary determines, by regulation, to be allowable.

55.     The Secretary has determined by regulation those expenses which may be included in the compensation for a § 105(*l*) lease.  25 C.F.R. § 900.69 provides that a § 105(*l*) lease "is to include compensation as provided in the statute as well as 'such other reasonable expenses that the Secretary determines, by regulation, to be allowable.'"  25 C.F.R. § 900.74

provides that "[t]here are three options available" to a tribe in proposing lease compensation. Those options are: (1) fair market rental, (2) a combination of fair market rental and paragraphs (a) through (h) of § 900.70, provided that no element of expense is duplicated in fair market rental; and (3) paragraphs (a) through (h) of § 900.70 only.  25 C.F.R. § 900.70 lists various elements of compensation, including rent, depreciation, principal and interest paid or accrued, various operation and maintenance expenses, repairs and alterations, and other reasonable expenses.

56.    The Secretarial amount under 25 U.S.C. § 450j-1(a)(1) of an associated retroceded program is not listed in either the statute or the regulations as a permissible measure of lease compensation.  Nor do the statute or regulations provide anywhere that compensation may be capped at the Secretarial amount under 25 U.S.C. § 450j-1(a)(1) of an associated program.  Section 105(*l*) is a separate statutory authority under which the Secretary must enter into a lease with and provide lease funding to a tribe or tribal organization meeting the statutory criteria.

57.    The IHS's determination that its only obligation is to provide the Secretarial amount under 25 U.S.C. § 450j-1(a)(1), and that it has discretion to determine whether or not to provide any additional funding for a § 105(*l*) lease based on factors other than those described in § 105(*l*) and the implementing regulations, is contrary to the ISDEAA and the Secretary's own regulations.

58.    Therefore, Maniilaq asks this Court to declare: (1) that compensation for a § 105(*l*) lease is mandatory; (2) that such compensation must be based on the compensation options described in § 105(*l*) and its implementing regulations; (3) that the Secretary does not have discretion to base compensation on factors not described in § 105(*l*) or its implementing

regulations; and (4) that compensation under a § 105(*l*) lease is distinct from and is not limited

by or duplicative of the amount that the IHS would have otherwise provided for a retroceded

share of an associated program through a compact and funding agreements.

<u>COUNT II:   Mandamus and Injunctive Relief: Award and Fund the Final Offer</u>

59.     The allegations in Paragraphs 1—58 are incorporated herein by reference.

60.     25 U.S.C. § 450m-1(a) authorizes this court to provide mandamus relief "to

compel an officer or employee of the United States, or any agency thereof, to perform a duty

provided under this subchapter or regulations promulgated hereunder."  25 U.S.C. §  450m-1(a)

also authorizes this court to provide injunctive relief "against any action by an officer of the

United States or any agency thereof contrary to this subchapter or regulations promulgated

thereunder . . . (including immediate injunctive relief to reverse a declination finding under

section 450f(a)(2) of this title or to compel the Secretary to award and fund an approved self-

determination contract)."  The language "to award and fund an approved self-determination

contract" applies also to self-governance compacts and funding agreements.  The ISDEAA

provides that: "For the purpose of section 450m-1 of this title, the term "'contract'" shall include

compacts and funding agreements entered into under this part."  25 U.S.C. § 458aaa-10(a).

61.     The IHS's rejection of Maniilaq's December 5, 2014 final offer was contrary to

the ISDEAA and its implementing regulations.  The IHS's rejection letter did not establish, as a

matter of law, that the statutory rejection criterion relied on—that "the amount of funds proposed

in the final offer exceeds the applicable funding level to which the Tribe is entitled under the

ISDEAA"—applies.  Nor did the rejection letter establish that any of the other criteria for

rejecting a final offer listed in 25 U.S.C. § 458aaa-6(c) are applicable.  The IHS's rejection of the

final offer was therefore improper under the ISDEAA, and the Secretary is required to accept the final offer.

62.     The regulations governing final offers require that "[a]fter the Indian Tribe's final offer is accepted or deemed accepted, the terms of the Indian Tribe's final offer and any funds included therein, shall be added to the funding agreement or compact within 10 days of the acceptance or the deemed acceptance." 42 C.F.R. § 137.138.

63.     Mandamus and injunctive relief is appropriate to compel the Defendants to perform the duty imposed on them by this regulation, which is to add the terms of the final offer, including the lease, to the funding agreement, with necessary conforming language related to the CHAP and VBC Programs, and to provide the $249,842 in compensation.

## PRAYER FOR RELIEF

64.     25 U.S.C. § 450m-1(a) authorizes this court to provide appropriate relief including money damages, injunctive relief against any action by the Defendants contrary to the ISDEAA or its implementing regulations, and mandamus relief to compel the Defendants to perform a duty provided under the ISDEAA, including immediate injunctive relief to reverse a declination finding under 25 U.S.C. § 450f(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract.  Maniilaq respectfully asks that this Court:

A.     Declare that compensation for a § 105(*l*) lease is mandatory; that such compensation must be based on the compensation options described in § 105(*l*) and its implementing regulations; that the Secretary does not have discretion to base compensation on factors not described in § 105(*l*) or its implementing regulations; and that compensation under a § 105(*l*) lease is distinct from and is not limited by or duplicative of the amount that the IHS would have otherwise

provided for a retroceded share of an associated program through a compact and funding agreements;

B.      Grant injunctive and mandamus relief to reverse the IHS's rejection of Maniilaq's December 5, 2015 final offer and to compel the Defendants to enter into the proposed lease of the Kivalina VBC facility and incorporate the lease into Maniilaq's funding agreement, along with necessary language to implement the terms of the final offer; and

C.      Grant mandamus and injunctive relief to compel the Defendants to pay Maniilaq $249,842 in compensation under the lease for using the Kivalina VBC facility to provide health services under the CHAP program carried out pursuant to the funding agreement;

D.      Award interest on the amount in subparagraph C from the date of the decision rejecting the final offer under the Prompt Payment Act or other applicable law;

E.      Award reasonable attorney fees and expenses in favor of Maniilaq under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law; and

F.      Grant such other relief as the Court deems just.

Respectfully submitted,

  s/ Caroline Mayhew
Caroline Mayhew (DC Bar No. 1011766)
Hobbs, Straus, Dean, & Walker LLP
2120 L St. NW, Suite 700
Washington, DC  20037
202-822-8282 (Tel.)
202-296-8834 (Fax)

Geoffrey D. Strommer, *pro hac vice pending*
Stephen D. Osborne, *pro hac vice pending*
Hobbs, Straus, Dean & Walker, LLP
806 SW Broadway, Suite 900
Portland, OR 97205
503-242-1745 (Tel.)
503-242-1072 (Fax)

Attorneys for the Maniilaq Association


DATED:  January 30, 2015